

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/31/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNIFER RONDINELLI REILLY,

        Plaintiff,

        -against-

PLOT COMMERCE,

        Defendant.

15-CV-05118 (PAE) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. PAUL A. ENGELMAYER**

## BARBARA MOSES, United States Magistrate Judge.

Plaintiff Jennifer Rondinelli Reilly, a photographer, filed this action under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.* (DMCA), after defendant Plot Commerce used one of Reilly's copyrighted photographs on its website without permission or payment. On March 11, 2016, the Hon. Paul A. Engelmayer granted plaintiff's motion for a default judgment against Plot Commerce and referred this action to the Magistrate Judge initially designated in this case, the Hon. Debra C. Freeman, to conduct an inquest concerning plaintiff's damages, attorneys' fees, and costs. On March 14, 2016, the inquest was reassigned to me.

For the reasons that follow, I respectfully recommend that the District Judge award plaintiff $15,000 in statutory damages under the Copyright Act, $10,000 in statutory damages under the DMCA, and $5,680 in attorneys' fees and costs.

## PROCEDURAL BACKGROUND

Reilly filed suit on June 30, 2015, alleging that Plot Commerce violated the Copyright Act and the DMCA by (a) creating unauthorized copies of a photograph that Reilly took of musician Tim Reynolds (the Photograph); (b) stripping her watermark and copyright notice; and (c) displaying the altered copies on its website at www.charged.fm (the Charged.fm Website) for the

purpose of selling or facilitating the sale of tickets to concerts at which Reynolds was scheduled to perform. *See* Compl. (Dkt. No. 1) ¶¶ 3-13.

On November 12, 2015, Reilly served Plot Commerce via the New York Secretary of State. *See* Aff. of Service, filed Nov. 25, 2015 (Dkt. No. 9), at 1. Plot Commerce failed to respond. On December 14, 2015, at Reilly's request (Dkt. No. 10), the Clerk of the Court issued a Certificate of Default (Dkt. No. 11), and on January 13, 2016, Reilly moved for entry of a default judgment. (Dkt. No. 12.) On January 14, 2016, Judge Engelmayer directed Plot Commerce to respond to Reilly's motion no later than February 3, 2016, and scheduled a hearing for March 11, 2016. *See* Order, dated Jan. 14, 2016 (Dkt. No. 13), at 1. On January 22, 2016, Reilly served the January 14 Order and her motion papers on Plot Commerce, via the Secretary of State. *See* Aff. of Service, filed Feb. 1, 2016 (Dkt. No. 14), at 1. Plot Commerce did not respond to the motion, and did not appear on March 11. Judge Engelmayer thereupon granted plaintiff's default motion (Dkt. No. 16) and referred the case for a damages inquest. (Dkt. No. 15.)

By order dated March 15, 2016 (Dkt. No. 17), I directed Reilly to file her Proposed Findings of Fact and Conclusions of Law (Proposed Findings) no later than April 15, 2016, including all affidavits and documentary evidence necessary to support her proposed damages amount. On April 5, 2016, Reilly served a copy of my March 15 Order on Plot Commerce by mail, along with her Proposed Findings and supporting evidence, and on April 11, 2016, she served Plot Commerce with the same materials via the Secretary of State. *See* Aff. of Service, filed Apr. 15, 2016 (Dkt. No. 19), at 1-4. Plaintiff seeks statutory damages under the Copyright Act in the amount of $150,000, statutory damages under the DMCA in the amount of $125,000,

2

attorneys' fees in the amount of $7,747, and costs in the amount of $450. *See* Prop. Findings (Dkt. No. 18), ¶¶ 59, 63.[1]

Once again, Plot Commerce failed to respond.

Since neither party has requested a hearing on the issue of damages, and since defendant did not submit any written materials, I have conducted the inquest based solely upon the materials submitted by plaintiff. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) ("affidavits, evidence, and oral presentations by opposing counsel" constitute a "sufficient basis from which to evaluate the fairness of the . . . sum" without the need for a hearing on damages); *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 524, 526-27 (S.D.N.Y. 2012) (adopting Magistrate Judge's report and recommendation on damages, issued after referral for inquest following default, without an evidentiary hearing).

## JURISDICTION AND VENUE

Reilly sues under two federal statutes: the Copyright Act and the DMCA. Subject matter jurisdiction is properly based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (copyright jurisdiction). *See* Compl. ¶ 4.

I am also satisfied as to personal jurisdiction over the defendant, which is "a necessary prerequisite to entry of a default judgment." *Sheldon v. Plot Commerce*, 2016 WL 5107072, at

---

[1] Although Reilly requested injunctive relief in her pleading, *see* Compl. at 12, ¶ 9, her Proposed Findings do not include any discussion of such relief. Consequently, I have not considered whether injunctive relief could be warranted in this case. *See Mason Tenders Dist. Council of Greater N.Y. v. G&C Constr. Safe, Inc.*, 2011 WL 744918, at *9-10 (S.D.N.Y. Feb. 8, 2011) (plaintiff waived request for injunctive relief when it failed to "address[] the issue at this inquest"), *report and recommendation adopted*, 2011 WL 744914 (S.D.N.Y. Mar. 2, 2011); *Cablevision Sys. N.Y.C. Corp. v. Santiago*, 2003 WL 1882254, at *4 n. 6 (S.D.N.Y. Mar. 17, 2003) (plaintiff waived request for enhanced damages when it failed to "raise[] this request in its inquest submissions"), *report and recommendation adopted*, 2003 WL 1873914 (S.D.N.Y. Apr. 11, 2003).

*6 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). Neither the Copyright Act nor the DMCA contains its own personal jurisdiction or service provision. Thus, I must first "determine whether the defendant is subject to jurisdiction under the law of the forum state—here, New York," and then "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). These questions are both easily answered.

Plaintiff alleges that Plot Commerce is a Nevada corporation with its principal place of business in Brooklyn, New York. Compl. ¶¶ 2-3. The website of the New York Division of Corporations corroborates this allegation, listing Plot Commerce as a Nevada corporation registered to do business in New York, with a process address and a principal executive office at 10 Jay Street, Brooklyn, New York 11201.[2] Similarly, the Charged.fm Website, which is owned and operated by Plot Commerce, *see* Compl. ¶ 3, instructs customers seeking refunds for cancelled events to mail their tickets to 10 Jay Street, Suite 206, Brooklyn, NY 11201.[3]

Because Plot Commerce has its principal place of business in Brooklyn, it is amenable to general personal jurisdiction throughout the state under New York law, *see* N.Y. C.P.L.R. § 301; *Magdalena v. Lins*, 999 N.Y.S.2d 44, 45 (1st Dep't 2014), and the exercise of such jurisdiction

---

[2] *See* Entity Information for Plot Commerce, N.Y. Dep't of State, Div. of Corps., https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (website requires user to enter name of entity to be searched) (last visited October 31, 2016).

[3] *See FAQ*, Charged.fm, http://www.charged.fm/faq (last visited October 31, 2016). The same website invites job applicants to apply for positions "in an open, dynamic space out here in DUMBO, Brooklyn—located on the water with an inspiring view of Manhattan and the Brooklyn Bridge." *See Jobs*, Charged.fm, http://www.charged.fm/jobs (last visited October 31, 2016).

4

comports with the requirements of the Due Process Clause. *See Sonera Holding*, 750 F.3d at 225 ("the place of incorporation and the principal place of business" are the "paradigm bases" for determining that a corporation is "at home" and therefore "amenable to all-purpose jurisdiction") (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). *See also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1353 (3d ed. 2004) (service of process is "the means by which a federal court gives notice to the defendant and asserts jurisdiction over him"). Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment. *See Sheldon*, 2016 WL 5107072, at *6 ("failure to adequately prove proper service of court documents under Rule 4 bars the entry of a default judgment"); *Lliviganay v. Cipriani 110 LLC*, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (lack of proof of proper service "is an independent obstacle to a default judgment").

Fed. R. Civ. P. 4(h)(1)(A) and 4(e)(1) state that service may be made on a domestic or foreign corporation by following state law in the state where the district court is located. New York law permits service on a foreign corporation authorized to do business in New York by personal delivery of the required papers (together with the statutory fee) to the Secretary of State, or any person authorized by the Secretary to receive such service, in Albany. N.Y. C.P.L.R. § 311(a); N.Y. Bus. Corp. L. § 306(b)(1). Service is complete when the Secretary of State is "so served," N.Y. Bus. Corp. L. § 306(b)(1); there is no mailing or other follow-up requirement.

Plaintiff's initial Affidavit of Service demonstrates that she complied with subsection 306(b)(1) on November 12, 2015. (Dkt. No. 9.) The record therefore reflects adequate service of process. [4]

Venue raises a more complex question. Plaintiff alleges that venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(2), and (d). Compl. ¶ 6. Subsection 1391(b)(1) states that a civil action may be brought in "a judicial district in which any defendant resides." Pursuant to subsection 1391(c)(2), a corporation resides where it is incorporated and where it maintains its principal place of business. Brooklyn, where Plot Commerce maintains its principal place of business, is in the Eastern District of New York. Plot Commerce therefore

---

[4] Before plaintiff initiated this action, her attorney Leslie Burns communicated with Plot Commerce's attorney Renée Eubanks in an effort to negotiate a pre-litigation settlement. *See* Burns Second Decl., filed April 15, 2016 (Dkt. No. 18-1), ¶ 3 & Ex. A. When those efforts failed, Reilly filed her complaint and attempted to serve Plot Commerce at its "publicly available address" (presumably the Brooklyn address listed on its website and on file with the Division of Corporations), but could not locate the company there. *See* Andersen Decl., filed Jan. 13, 2016 (Dkt. No. 12-2), ¶¶ 5-6. On September 10, 2015, Reilly's attorney Evan Andersen asked Eubanks to accept service of process on her client's behalf. *Id.* ¶ 6 & Ex. A. On September 14, 2015, Eubanks replied that she needed to "check with the company" and would get back to him when she had an answer. *Id.* Ex. A. Thereafter, in response to Andersen's repeated inquiries, Eubanks stated in a series of emails that she was still waiting for Plot Commerce to "get back to me" or to "confirm the engagement." *Id.* Exs. A & B. On October 17, 2015 – more than a month after Andersen first asked whether she would accept service on behalf of her client – Eubanks stated that Plot Commerce still had not "made a final decision to engage this firm for the litigation," and that "if and when" it did so she would "have an answer for you regarding service." *Id.* Ex. A. Unable to obtain agreement from Eubanks, plaintiff ultimately utilized the procedure authorized by N.Y. Bus. Corp. L. § 306(b)(1). Given her compliance with that statute, Reilly need not separately establish that Plot Commerce had actual notice of the claims against it. Were such evidence required, however, Eubanks's emails would be sufficient to demonstrate that Plot Commerce knew about Reilly's lawsuit and that it had ample opportunity to appear and defend. Moreover, its conduct appears to have been consistent with a pattern of avoiding service and ignoring lawsuits. In *Sheldon*, as here, attorney Eubanks declined to accept service of process on behalf of Plot Commerce while awaiting a "final decision" as to whether her client would retain her for the litigation. 2016 WL 5107072 at *3. In *Sheldon*, as here, Plot Commerce was ultimately served through the Secretary of State. *Id.* And in *Sheldon*, as here, Plot Commerce failed to appear or defend, leading to default proceedings and a damages inquest. *See id.* at *20.

6

resides, for venue purposes, in the District of Nevada, where it is incorporated, and in the Eastern District of New York.

Pursuant to subsection 1391(d), a corporation may also be deemed to reside in "any district" within a state with multiple judicial districts "within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." Alternatively, pursuant to subsection 1391(b)(2), a civil action may be brought in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." However, Reilly's complaint does not contain any allegations concerning Plot Commerce's contacts in the Southern District of New York, nor any allegations tying the events or property underlying this action to the Southern District. *See* Compl. ¶¶ 1, 8 (Reilly resides in Wisconsin, which is also where she took the Photograph). On the present record, I cannot conclude that venue was properly laid in this District.

Nonetheless, defects in venue may be waived, *see* Fed. R. Civ. P. 12(b)(3), and are deemed waived when a defendant defaults after having been "properly served with process by a court having subject matter jurisdiction." *Hoffman v. Blaski,* 363 U.S. 335, 343 (1960). *See also Joe Hand Promotions, Inc. v. Elmore*, 2013 WL 2352855, at *1 n.2 (E.D.N.Y. May 29, 2013) (where defendants "waived their right to object to improper venue" by failing to appear or defend, court calculated damages and entered default judgment notwithstanding apparent defects in venue). Moreover, "[a] district court may not dismiss a case *sua sponte* for improper venue absent extraordinary circumstances." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999). I therefore respectfully recommend that the District Judge deem any defects in venue

waived by Plot Commerce, and proceed to the remaining issues presented by Reilly's Proposed Findings.

## LIABILITY

Following a default, the Court must accept all of the well-pleaded factual allegations in the complaint as true, except those relating to damages. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Wilen v. Alt. Media Net., Inc.*, 2004 WL 2823036, at *1 (S.D.N.Y. Dec. 3, 2004), *report and recommendation adopted*, 2005 WL 167589 (S.D.N.Y. Jan. 26, 2005). If the well-pleaded allegations establish the defaulting party's liability, the only remaining issue is whether plaintiff has provided adequate support for its requested relief. *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

As set forth below, the well-pleaded facts contained in Reilly's complaint are sufficient to establish Plot Commerce's liability under the Copyright Act and the DMCA.

Plaintiff Reilly is a professional photographer who specializes in editorial and event photography, including photography of bands and concerts. Compl. ¶ 7. Reilly owns the registered copyright in the Photograph, which she took, and which shows musician Tim Reynolds performing at the Farm Aid 2010 concert. Compl. ¶¶ 8, 18, 20 & Ex. A.

On October 16, 2010, Reilly first published the Photograph on the "business website" she maintained at that time. Compl. ¶ 9. That website was deactivated in 2012. *Id.* In 2012, Reilly posted the Photograph on her "fine art website," and, in 2013, she posted the Photograph on her new "business website," which redirects viewers to the Photograph on an "archive site." *Id.* ¶ 10. On her fine art website, Reilly posted a notice adjacent to the Photograph reading, in part, "Photo

8

by Jennifer Rondinelli Reilly. All rights reserved. No use without permission." Compl. ¶ 12. On the business website and archive site, the Photograph bore a watermark in the bottom-right corner reading, "©Jennifer Rondinelli Reilly JRRPhoto.com." *Id.* ¶ 11. Additionally, on the archive site, Reilly posted a notice adjacent to the Photograph, reading, "Photo by Jennifer Rondinelli Reilly. All rights reserved. No use without permission." *Id.* Below that, another notice read, "©2010 Jennifer Rondinelli Reilly. All rights reserved. No use without permission." *Id.*

The Register of Copyrights issued a Certificate of Registration to Reilly for the Photograph, No. VA-1-878-670, effective October 8, 2013. Compl. ¶ 20 & Ex. A.

Defendant Plot Commerce owns and operates the Charged.fm Website, which functions as a marketplace that advertises and facilitates sales of tickets to concerts and sporting events. Compl. ¶¶ 2-3, 21. In or around December 2014, defendant accessed the Photograph from one of Reilly's websites, copied it, "cropped it so as to remove the watermark or notice," and displayed the unauthorized and altered copy on its Charged.fm Website without attribution. Compl. ¶¶ 13, 15, 17. As can be seen from the screenshots incorporated into the complaint, the website displayed the Photograph – sometimes as a small "thumbnail" and sometimes in a larger format that appeared behind the text and other graphics on the Charged.fm Website – in connection with ticket sales for upcoming concerts at which Tim Reynolds and other musicians were expected to perform. *Id.* ¶13.

In January 2015, Reilly conducted a Google Image search and discovered Plot Commerce's unauthorized copying, alteration, and display of the Photograph on the Charged.fm Website. Compl. ¶ 14. On January 20, 2015, through attorney Burns, Reilly "sent a letter by mail and email to Charged.fm providing notice that the Photograph appeared on the Website without authorization of Reilly or the law and presenting an offer to settle." *Id.* ¶ 24.

9

On or around January 28, 2015, Plot Commerce "removed the Photograph from the Charged.fm Website." Prop. Findings ¶¶ 21-22; Burns Second Decl. ¶¶ 4-6 & Ex. A. Over the following months the parties' attorneys engaged in "multiple communications" regarding the facts and law; however, defendant ultimately "disclaimed liability." Compl. ¶ 25. This action followed. [5]

To establish a violation of the Copyright Act, a plaintiff must demonstrate her ownership of a valid copyright and defendant's infringement, that is, copying of original elements of the copyrighted work. *See Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010); *Malibu Media, LLC v. Doe*, 2015 WL 6116620, at *3 (S.D.N.Y. Oct. 16, 2015). Both requirements are satisfied here. The well-pleaded allegations of plaintiff's complaint demonstrate that Reilly holds a valid copyright in the Photograph, *see* Compl. ¶¶ 8, 18, 20 & Ex. A, and that defendant infringed Reilly's copyright by producing and displaying an unauthorized copy of the Photograph on its website. *Id.* ¶¶ 13, 15, 17.

Reilly's well-pleaded allegations also establish a DMCA violation. 17 U.S.C. § 1202(b) states:

No person shall, without the authority of the copyright owner or the law —

(1) intentionally remove or alter any copyright management information,

(2) distribute . . . copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

---

[5] The fact that Plot Commerce removed the Photograph from the Charged.fm Website promptly on receipt of Burns's letter appears only in Reilly's inquest submissions, not her complaint. Consequently, although this fact is relevant to damages, I do not rely on it in connection with defendant's liability. *See United States ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 2, 2014) ("[i]t is the . . . [c]omplaint, not the inquest submissions, that establishes defendants' liability") (quoting *Gutman v. Klein*, 2010 WL 4975593, at *10 (E.D.N.Y. Aug. 19, 2010) (alterations in the original).

(3) distribute . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

Copyright management information (CMI) includes the name of and other identifying information about the author or copyright owner of a work, "the information set forth on a notice of copyright," the "[t]erms and conditions for use of the work," and "links to such information." 17 U.S.C. § 1202(c)(1), (2), (3), (6), (7). Thus, to establish a violation under subsection 1202(b), a plaintiff must show "(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Banxcorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (collecting cases).[6]

Reilly alleges that Plot Commerce, without authorization, "intentionally removed Reilly's CMI and displayed and distributed the Photograph on at least five distinct URLs on the Charged.fm Website." Compl. ¶ 37.[7] She further alleges that Plot Commerce did so "knowing that Reilly's CMI had been removed, and knowing or having reasonable grounds to know that such removal or alteration would induce, enable, facilitate, or conceal a copyright infringement." *Id.* These allegations, which are taken as true after default, are sufficient to establish liability under subsection 1202(b).

---

[6] 17 U.S.C. § 1202(a) makes it unlawful to knowingly provide or distribute "false" copyright management information with the intent to induce, facilitate, or conceal infringement. Since Plot Commerce stripped plaintiff's CMI from the Photograph but did not replace it with any false CMI, subsection (a) is not directly relevant here.

[7] The "five different URLs" are five different locations or screens within the website on which the Photograph could be seen. The complaint includes the URL (uniform resource locator) for

## DAMAGES

Although plaintiff's complaint prays for a variety of relief, both legal and equitable, her Proposed Findings focus on damages. Plaintiff requests $150,000 in statutory damages for a single instance of willful copyright infringement, $125,000 in statutory damages for what she characterizes as five distinct violations of the DMCA, $7,747 in attorneys' fees, and $450 "for the court filing fee." Prop. Findings ¶¶ 43-63.

### A. Duplicative Damages

Both the Copyright Act and the DMCA allow a plaintiff to elect an award of statutory damages in lieu of actual damages or an award of the infringer's profits.[8] Reilly has elected statutory damages under both statutes. Prop. Findings ¶¶ 44, 54. She did this because, as she freely discloses, her actual damages are only $3,052, based on the licensing fee she would have charged Plot Commerce for its use of the Photograph, *see id.* ¶ 41; Reilly Decl. (Dkt. No. 18-1), at 10-11, ¶¶ 3-4, and she was unable, without discovery, to determine Plot Commerce's profits attributable to its misconduct. *See* Prop. Findings ¶ 42. It is clear that plaintiff is entitled to elect statutory damages. Whether she is entitled to such damages under both statutes – or only one – is less clear.

---

each such location, as well as a screenshot showing how the Photograph appeared on each screen. Compl. ¶ 13.

[8] Under the Copyright Act, the plaintiff is ordinarily entitled to recover "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Under the DMCA, the ordinary measure of recovery is "the actual damages and any additional profits of the violator." 17 U.S.C. § 1203(c)(1)(A). Both statutes expressly permit the plaintiff to elect statutory damages as an alternative to these measures. *See* 17 U.S.C. § 504(c); 17 U.S.C. § 1203(c)(3)(A); *Agence France Presse*, 2014 WL 3963124, at *9 ("like the Copyright Act, the DMCA allows a plaintiff to choose between recovering actual damages and statutory damages").

"[T]he law ordinarily forbids a plaintiff from recovering twice for the same injury." *Agence France Presse v. Morel*, 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) (citing *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1997)). Some judges in our Circuit have relied on this principle to prohibit a plaintiff from recovering statutory damages under both the Copyright Act and the DMCA in the same case. *See, e.g.*, *Adobe Sys. Inc. v. Feather*, 895 F. Supp. 2d 297, 303 n.5 (D. Conn. 2012) (awarding statutory damages under the Copyright Act after noting that plaintiffs "do not seek separate damages for their DMCA claim, nor could they"); *Tu v. TAD Sys. Tech.*, 2009 WL 2905780, at *3-5 (E.D.N.Y. Sept. 10, 2009) (awarding statutory damages under the Copyright Act alone after holding that defendants' production and distribution of a "pirated" version of plaintiffs' software also violated the DMCA and the Lanham Act, but that plaintiffs were "not entitled to duplicative recoveries"); *Kennedy v. Medgen, Inc.*, No. 14-CV-5843 (ADS) (AYS), slip. op. at 6 n.1 (E.D.N.Y. Apr. 16, 2016) (declining to award "duplicative statutory damages" under the Copyright Act and the DMCA).

Two recent cases, however, resulted in damage awards under both statutes. In *Agence France Presse*, the Hon. Alison J. Nathan substantially upheld a jury verdict awarding a photographer $1.2 million in statutory damages under the Copyright Act and $20,000 in statutory damages under the DMCA after defendants infringed plaintiff's copyright in eight photographs of the January 2010 earthquake in Haiti by taking them from another photographer's Twitter account without plaintiff's permission and distributing them – falsely credited to the other photographer – to thousands of customers through defendants' news feeds. 2014 WL 3963124, at *2-4, *16.[9] As Judge Nathan explained:

---

[9] The jury verdict ran jointly against both AFP and Getty. Judge Nathan granted judgment as a matter of law to Getty on a portion of plaintiff's DMCA claim – for reasons unrelated to the damages calculation – but left the award intact as to AFP. 2014 WL 3963124, at *16.

> Defendants are correct that the law ordinarily forbids a plaintiff from recovering twice for the same injury. But they have never argued that DMCA damages will *always* be duplicative of an award for copyright infringement, and therefore recognize that in an appropriate case, separate DMCA and copyright awards might be permissible. This is true because the Copyright Act and the DMCA protect different interests.

2014 WL 3963124, at *10 (citations omitted; emphasis in the original). Similarly, in *Sheldon*, the Hon. Cheryl L. Pollak reasoned that since "Plot Commerce both unlawfully reproduced the Photograph and altered the embedded copyright information," plaintiff was "authorized to seek statutory damages under the DMCA in addition to the actual damages requested under the Copyright Act." 2016 WL 5107072, at *16.

This action is also an "appropriate case" for an award of damages under both statutes. *Agence France Presse*, 2014 WL 3963124, at *10. As in *Sheldon*, "Plot Commerce both unlawfully reproduced the Photograph and altered the embedded copyright information." 2016 WL 5107072, at *16. Moreover, Reilly was injured in two different ways. Defendant's use of her copyrighted Photograph without her permission deprived her of the ability to control when and where it would be displayed, as well as the licensing fee she would ordinarily charge for such display. Defendant's removal of her copyright notice and other CMI deprived her of professional recognition for the display on the Charged.fm Website, and – arguably – made it easier for other potential infringers to compound that injury. *See* Russell W. Jacobs, *Copyright Fraud in the Internet Age*, 13 Colum. Sci. & Tech. L. Rev. 97, 147 (Feb. 15, 2012) (section 1202 of the DMCA protects a copyright owner's "rights of integrity and attribution," which in turn protect against "the widespread dispersion of inauthentic copies"). So long as the Court properly distinguishes among these injuries when it sets the amount of the award under each statute, no duplication will occur. I therefore respectfully recommend that the District Judge grant damages under both the Copyright Act and the DMCA, as further set forth below.

## B. Statutory Damages Under The Copyright Act

Under the Copyright Act, a plaintiff who elects statutory damages is entitled to an award of between \$750 and \$30,000 per work infringed, "as the court considers just." 17 U.S.C. § 504 (c)(1). Where the infringement was "willful," the maximum permissible award per infringed work rises to \$150,000. *Id.* § 504 (c)(2). An infringement is "willful" when the infringer (i) knew its conduct was infringing, or (ii) engaged in infringing conduct as result of reckless disregard or willful blindness to the prospect that its conduct was infringing. *Bryant v. Media Right Prods.*, 603 F.3d 135, 143 (2d Cir. 2010); *see also Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005); *Agence France Presse*, 2014 WL 3963124, at *3.

The Copyright Act affords the trial court "wide discretion" in setting the amount of statutory damages, *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986); *accord Noble v. Crazetees.com*, 2015 WL 5697780, at *6 (S.D.N.Y. Sept. 28, 2015) (Engelmayer, J.); *Arista Records LLC v. Usenet.com, Inc.*, 2010 WL 3629688, at *4 (S.D.N.Y. Feb. 2, 2010), and "[c]ase law reflects a wide range of awards where there have been infringing uses of photographs." *Burch v. Nyarko*, 2007 WL 2191615, at *3 (S.D.N.Y. July 31, 2007) (collecting cases). In this Circuit, courts are guided by the following factors to determine the appropriate measure of statutory damages for copyright infringement: (i) the expenses saved and profits earned by the infringer; (ii) the revenues lost by the plaintiff; (iii) the value of the copyright; (iv) the deterrent effect on those other than the infringer; (v) the willfulness of the infringer's conduct; (vi) whether the infringer cooperated in providing records to assess the value of the material infringed; and (vii) the likelihood the award will discourage the defendant from repeating its infringement. *See Noble*, 2015 WL 5697780, at *6; *Usenet.com*, 2010 WL 3629688, at *4. "Awards of statutory damages serve two purposes—compensatory and punitive."

15

*Fitzgerald Publ'g Co.*, 807 F.2d at 1117. At the punitive end of the scale, the statutory maximum is typically reserved for "truly egregious conduct such as where a defendant has been adjudged to have willfully infringed, yet continued the same pattern of behavior in contravention of court order." *EMI Apr. Music Inc. v. 4MM Games, LLC*, 2014 WL 325933, at \*5 (S.D.N.Y. Jan. 13, 2014) (quoting *Tips Exps., Inc. v. Music Mahal, Inc.*, 2007 WL 952036, at \*5 (E.D.N.Y. Mar. 27, 2007)), *report and recommendation adopted*, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014).

Reilly seeks to recover $150,000, which is the maximum permissible award under the Copyright Act for willful infringement of a copyright in a single work. Prop. Findings ¶ 59. Her well-pleaded allegations support the conclusion that Plot Commerce acted willfully. *See* Compl. ¶ 13 (defendant "accessed the Photograph . . . copied it, cropped it so as to remove the watermark or notice, and then displayed it on the Charged.fm Website in multiple locations"). The act of removing plaintiff's CMI from the Photograph before displaying it on the Charged.fm Website not only establishes a violation of the DMCA (as discussed below); it also demonstrates that defendant knew that its conduct was infringing. Moreover, plaintiff has expressly alleged willfulness, *see id.* ¶ 34 ("[t]he Infringements by Charged.fm were willful and performed with knowledge that the reproduction, display, and distribution of the Photograph was unauthorized"), and "through [its] default [Plot Commerce] has admitted that allegation. This alone would be sufficient for a finding of willfulness." *Cengage Learning, Inc. v. Shi*, 2015 WL 5167775, at \*5 (S.D.N.Y. Sept. 3, 2015). *See also Noble*, 2015 WL 5697780, at \*7 ("Where, as here, the defendant has defaulted, the complaint's allegations of willfulness may be taken as true."); *CJ Prods. LLC v. Your Store LLC Online LLC*, 2012 WL 2856068, at \*3 (S.D.N.Y. July 12, 2012), *report and recommendation adopted*, 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012); *Blue Moon Media Grp., Inc. v. Field*, 2011 WL 4056068, at \*7 (E.D.N.Y. Apr. 11, 2011), *report and*

16

*recommendation adopted*, 2011 WL 4056088 (E.D.N.Y. Sept. 12, 2011); *Peer Int'l Corp. v. Max Music & Entm't,* 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004). Accordingly, Reilly's maximum statutory award under the Copyright Act is $150,000.

However, not all willful conduct constitutes the kind of "truly egregious conduct," *EMI Apr. Music*, 2014 WL 325933, at *5, that justifies maximum damages. In this case, Plot Commerce removed the Photograph from its website as soon as it received a demand letter from plaintiff's counsel. *See* Prop. Findings ¶¶ 21-22; Burns Second Decl. ¶¶ 4-6 & Ex. A. *Cf. Sheldon*, 2016 WL 5107072, at *17 (notwithstanding plaintiff's cease-and-desist letter, followed by negotiations between the parties' counsel, Plot Commerce continued to display the infringing photograph on its website). Moreover, there is no allegation in this case that defendant acted "in contravention of [a] court order." *See EMI Apr. Music*, 2014 WL 325933, at *5.

Although there need not be a "direct correlation between statutory damages and actual damages," *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014), the statutory award should bear "some relation to actual damages suffered." *Cengage Learning*, 2015 WL 5167775, at *4 (quoting *Van Der Zee v. Greenidge*, 2006 WL 44020, at *2 (S.D.N.Y. Jan. 6, 2006)). Where the infringement was willful but not "truly egregious," courts in this Circuit frequently award statutory damages "of between three and five times the cost of the licensing fees the defendant would have paid." *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) (Engelmayer, J.) (collecting cases and awarding "approximately five times the sum of BMI's unpaid licensing fees").

Had Reilly licensed the Photograph to Plot Commerce, she would have charged it $3,052. *See* Reilly Decl. ¶ 4. The maximum statutory award of $150,000 would be almost fifty times that sum. On the facts of this case, that is too much. Damages within the usual range of three to five

17

times the forgone licensing fee will be sufficient not only to compensate plaintiff for the fee she lost – and the time that has elapsed since that fee should have been paid – but also to punish the infringer and to deter other potential infringers contemplating comparable conduct. *See Noble*, 2015 WL 5697780, at \*7 (awarding statutory damages "sufficient to compensate [plaintiff] for any damages he suffered, to strip the defendants of any ill-gotten gain and to deter similar infringements in the future").[10] For these reasons, I respectfully recommend that the District Judge award plaintiff $15,000 in statutory damages under the Copyright Act.

## C. Statutory Damages Under The DMCA

The DMCA permits a plaintiff to recover an award of statutory damages, in the range of $2,500 to $25,000, "for each violation of section 1202." 17 U.S.C. § 1203(3)(B). However, there is "uncertainty as to what constitutes a single violation of the DMCA." *Sheldon*, 2016 WL 5107072, at \*15, and the appellate courts have not yet spoken on the issue. *Id.* (noting the "dearth of authority"). *See also Stockwire Research Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266 (S.D. Fla. 2008) ("the DMCA does not define the scope or meaning of the phrase 'each violation'").

In *McClatchey v. Associated Press*, 2007 WL 1630261 (W.D. Pa. June 4, 2007), defendant AP copied plaintiff's photograph, cropped it to remove her copyright notice, and then distributed it to 1,147 news organizations through its "Photostream" service. Ruling on a motion *in limine*, the court held that the language of the statute contemplates one award for "each

---

[10] Reilly argues that the damages must be substantial to deter Plot Commerce from engaging in future infringement, because it is "wealthy" and that "[t]he wealth of the defendant has been widely recognized as relevant to the deterrent effect of a damages award." Prop. Findings ¶ 52. As evidence of Plot Commerce's wealth, plaintiff points to its own allegation (made in a pleading in another case) that it had $17 million in "revenue" in 2014. *Id.* ¶ 23. Revenue alone, however, neither guarantees profit nor determines "wealth," and is therefore a poor basis on which to determine the likely deterrent effect of a statutory award.

violative act" of the defendant, regardless of how many copies of the infringed work were distributed. *Id.* at \*6. Thus, "AP committed only one alleged violative act by distributing the [altered] photograph to its Photostream subscribers." *Id.* However, AP did not contest "that the alleged removal of [plaintiff's] CMI would be a separate violation." *Id.* at \*5 n.2. Therefore, the *McClatchey* court concluded, plaintiff could potentially recover two statutory damages awards under the DMCA. *Id.* at \*6.

Following *McClatchey*, a number of district courts have attempted to apply the same principle, making or permitting one statutory award for each "violative act" of the defendant, regardless of the number of "downstream recipients" of the unauthorized copy. 2007 WL 1630261, at \*5-6. For the most part, however, these cases overlook the actual result in *McClatchey* – which permitted the plaintiff to seek one award for the removal of its CMI in violation of subsection 1202(b)(1) and another for the distribution of the altered photograph in violation of subsection 1202(b)(2) or (b)(3) – and instead focus exclusively on how many times, and by what method, the defendant distributed the unauthorized copy or copies. *See*, *e.g.*, *Stockwire Research Grp.*, 477 F. Supp. 2d at 1267 (defendants committed "three violative acts" because that was "the number of times the Unauthorized Product was posted on the internet for distribution"); *Stockart.com, LLC v. Engle*, No. 10-CV-588, 2011 WL 10894610, at \*14 (D. Colo. Feb. 18, 2011) (plaintiff was entitled to 34 statutory awards where defendant excised plaintiff's CMI from 34 images and then posted the altered copies on the internet), *report and recommendation adopted*, Order dated Apr. 7, 2011 (Text Only Order); *Granger v. One Call Lender Servs., LLC*, 2012 WL 3065271, at \*5 (E.D. Pa. 2012) (where defendants copied plaintiff's Rate Calculator computer program, removed his CMI, inserted false CMI crediting On Call as the author, created five new versions of the program, and posted all six on their website,

they committed "six violative acts" and were assessed $2,500 "for each act of posting the Rate Calculator").

Within our Circuit, district courts have been somewhat more aggressive in their application of *McClatchey*. In *Agence France Presse*, the evidence showed that defendant AFP used its news feed to distribute eight photographs taken by plaintiff Morel but falsely credited to another photographer. 2014 WL 3963124, at *4. AFP later issued a "caption correction," correctly identifying the photographer, but continued to make the images available on its feed without Morel's permission – and added the identifier "AFP," thereby "implying that Morel was associated with AFP, which he was not." *Id.* at *7. After trial, Judge Nathan upheld a jury verdict finding that defendant AFP committed two DMCA violations with respect to each of the eight photographs at issue – "providing or distributing" false copyright management information in violation of subsection 1202(a), and "altering" CMI in violation of subsection 1202(b) – for a total of sixteen violations. 2014 WL 3963124, at *7.

Most recently, in *Sheldon*, Judge Pollak held that plaintiff could recover statutory damages for "20 violations of the DMCA," all arising out of a single photograph, because defendant Plot Commerce removed plaintiff's CMI from that photograph, displayed eleven "reproductions" on its website, and added the Charged.fm watermark or logo to nine of them. 2016 WL 5107072, at *15-16. Judge Pollak reasoned that "each act of removal and each act of addition of copyright information" was a "separate violation" of the DMCA, *id.* at *16, permitting the plaintiff to recover multiple damages awards. *Id.*

I agree that "each act of removal and each act of addition" can be a separate violation of the DMCA. However, in the case at bar there was no "act of addition." Reilly alleges – and because defendant defaulted, I accept – that Plot Commerce stripped her watermark and

copyright notice from the Photograph, thereby intentionally removing or altering CMI in violation of subsection 1202(b)(1). *See* Compl. ¶¶ 13, 37; Prop. Findings ¶¶ 37-39. In addition, Plot Commerce posted the altered image to the Charged.fm Website, thereby distributing a work with the knowledge that its CMI was removed in violation of subsection 1202(b)(3). *See McClatchey*, 2007 WL 1630261, at \*6 & n.2 (treating the "alleged removal of the CMI" as a separate violation from the distribution of the altered image). But there is no allegation in this case that Plot Commerce added its own watermark, logo, or other false CMI to the Photograph, or otherwise violated subsection 1202(a). *Cf. Sheldon*, 2016 WL 5107072, at \*15-16.

The remaining question is whether Plot Commerce committed one violation or multiple violations of subsection 1202(b)(3) when it uploaded the Photograph to the Charged.fm Website. Reilly argues that she is entitled to five statutory awards for the upload because her image appeared on five different pages within that website. *See* Prop. Findings ¶ 57 (arguing that "Plot Commerce displayed the Photograph on five separate occasions," corresponding to the five web pages on which plaintiff was able to view her work). I disagree. Where, as here, the violator posts a single image to a single website, I cannot conclude that each page within that website on which the image appears necessarily implies a separate "violative act" by the defendant. Many web pages are "dynamic," meaning that they "can interact with databases before assembling and displaying the final web page on a screen." Ty Tasker & Daryn Pakcyk, *Cyber-Surfing on the High Seas of Legalese: Law and Technology of Internet Agreements*, 18 Alb. L.J. Sci. & Tech. 79, 106 (2008). An image (or other content) need only be uploaded once to a database before it can be used to create multiple dynamic web pages based on the choices made by the user of the site. *Id. See also* Matthew J. Tokson, *The Content/Envelope Distinction in Internet Law*, 50 Wm. & Mary L. Rev. 2105, 2175-76 (2009) (a dynamic web page "directs a user to the results of a

search or other query of a website's database"). In this case, the plaintiff – who bears the burden of proof as to damages – has not presented any evidence concerning the architecture of the Charged.fm Website, and therefore has not established that Plot Commerce uploaded the Photograph more than once. *See McClatchey*, 2007 WL 1630261, at \*6 ("[t]he DMCA damages provisions are clearly focused on the defendant's conduct").

Moreover, counting web pages –as opposed to web uploads – would lead to "absurd results," *see Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 313, 317 (S.D.N.Y. 2011), in comparison to the now well-accepted *McClatchey* rule, under which a violator who posts an altered image to a news feed (or, presumably, to Twitter or Instagram), thereby delivering it directly to multiple recipients, is nonetheless deemed to have committed a single violation of the DMCA. 2007 WL 1630261, at \*6. *See also Craigslist, Inc. v. Doe 1*, 2011 WL 1897423, at \*5 (N.D. Cal. Apr. 25, 2011) (statutory damages under the DMCA should compensate and deter "rather than just resulting in a windfall" for the plaintiff), *report and recommendation adopted sub nom. Craigslist, Inc. v. Meyer*, 2011 WL 1884555 (N.D. Cal. May 18, 2011).

I therefore respectfully recommend that plaintiff be awarded statutory damages for two violations of the DMCA. I further recommend that each award be relatively modest, so as not to provide duplicate (or triplicate) compensation for injuries, such as plaintiff's lost licensing fee, that flow directly from defendant's unauthorized copying of the Photograph in violation of the Copyright Act and that I have already taken into account when considering the amount of her damages under that statute. It is certainly possible that defendant's removal of plaintiff's CMI and use of the altered image on its website caused her additional injuries (for example, loss of professional recognition or future business opportunities), above and beyond those traceable to the underlying Copyright Act violation. I am also cognizant of the difficulty inherent in

calculating – or even estimating – such damages where, as here, the defendant blocked discovery by defaulting. However, it is difficult to recommend "maximum damages" under the DMCA, as plaintiff requests, where she has not even articulated the nature of her additional injuries, much less identified the factors, if any, that would support her demand. *See* Prop. Findings ¶ 59 (arguing for maximum damages under both the Copyright Act and the DMCA without distinguishing between the two statutes). I therefore respectfully recommend that the District Judge award Reilly $5,000 for each of the two violative acts committed by Plot Commerce, for a total of $10,000 in statutory damages under the DMCA.

## D. Interest

"The Copyright Act neither authorizes nor forbids prejudgment interest on an award of statutory damages." *Barclays Capital Inc. v. Theflyonthewall.com,* 700 F. Supp. 2d 310, 329 (S.D.N.Y. 2010), (citing *In Design v. K–Mart Apparel Corp.,* 13 F.3d 559, 569 (2d Cir. 1994)), *rev'd in part on other grounds,* 650 F.3d 876 (2d Cir. 2011). The DMCA is similarly silent. Concluding that such an award is discretionary, several judges within this District have awarded both statutory damages and interest on those damages in copyright cases. *See, e.g., Cengage Learning,* 2015 WL 5167775, at *6; *EMI Apr. Music Inc.*, 2014 WL 325933, at *9; *Dweck v. Amadi*, 2011 WL 3809907, at *5 (S.D.N.Y. July 26, 2011), *report and recommendation adopted*, 2011 WL 3809891 (S.D.N.Y. Aug. 29, 2011); *Barclays Capital,* 700 F. Supp. 2d at 329.

I conclude, however, that there is no need for a discretionary award of prejudgment interest where the amount of the underlying statutory award is itself discretionary and can be set at a figure which compensates the plaintiff for, among other things, the time that has elapsed since the defendant infringed her rights. Since my recommended statutory awards already take

that elapsed time into account, it would be duplicative to add an interest award. I therefore respectfully recommend that no separate award of prejudgment interest be made.

### E. Attorneys' Fees and Costs

The Copyright Act expressly permits an award of reasonable attorneys' fees. 17 U.S.C. § 505. Similarly, the DMCA permits the court, "in its discretion," to award reasonable attorneys' fees to the prevailing party in a civil action under sections 1201 or 1202. 17 U.S.C. § 1203(b)(5). Attorneys' fees are generally warranted where the defendant acted willfully, *see, e.g.*, *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999), but are not automatic. An award of fees "lies within the sole and rather broad discretion of the Court." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006). "In determining whether the fee should be awarded, there is no precise rule or standard, but courts look to a non-exhaustive list of factors including 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Mahan v. Roc Nation, LLC*, 2015 WL 4388885, at \*1 (S.D.N.Y. July 17, 2015) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994)), *aff'd*, 634 F. App'x 329 (2d Cir. 2016). Given defendant's willful misconduct – which must now be deemed established – together with its failure to offer any defense to plaintiff's claims, I respectfully recommend that attorneys' fees be awarded in this case. Plaintiff has failed, however, to substantiate either the $7,747 she seeks in fees or the $450 she claims as costs.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The burden is on the fee

24

applicant to provide evidence that "the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005). A "prevailing market rate" should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Noble*, 2015 WL 5697780, at *9 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)) (alteration in the original).

Reilly's request for attorneys' fees is supported by declarations from her attorneys Burns, Andersen, and Kalpana Nagampalli, each containing a detailed chart concerning the work she or he performed in this matter. Burns states that she is an attorney licensed to practice in California whose hourly rate is $275. Burns Second Decl., ¶¶ 1, 7. Burns spent 6.9 hours working on this case. *Id.* ¶ 7. Andersen states that he is an attorney licensed to practice in Georgia whose hourly rate is $300. *See* Andersen Second Decl., dated Apr. 4, 2016 (Dkt. No. 18-2), ¶¶ 1, 6. Andersen spent 10.6 hours working on this case, including multiple emails to Eubanks concerning service of process. *Id.* ¶ 6. Nagampalli, who signed Reilly's complaint and other litigation filings, states that she is an attorney at Feldman Law Group, P.C. whose hourly rate is $300. Nagampalli Decl., dated Apr. 5, 2016 (Dkt. No. 18-3), ¶¶ 1, 3. Nagampalli spent 8.9 hours working on this case.

Although the work performed by these attorneys appears to be reasonable in scope and efficiently performed, I cannot recommend an award of the full amount sought, because plaintiff does not provide any of the background information necessary to determine whether her lawyers' hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Noble*, 2015 WL 5697780, at *9. Reilly's attorneys do not reveal when they graduated from law school (or where), how long they have been practicing (or where), whether they have any particular expertise relevant to this case, or even – in the case of Burns and Andersen – what law firm, if any, employs them. *See* Burns

Second Decl. ¶ 1; Andersen Second Decl. ¶ 1 (stating only that Reilly retained "our firm"). Consequently, I respectfully recommend that fees be awarded for all of the time spent by plaintiff's attorneys, but at a flat rate of $200 per hour, which is within the range of reasonable hourly fees for relatively junior attorneys with no special expertise in copyright law. *See BWP Media USA Inc. v. Uropa Media, Inc.,* 2014 WL 2011775 at *3 (S.D.N.Y May 16, 2014) (awarding $200 per hour for a third-year associate who made "no representation that she has special expertise in copyright litigation"); *Noble,* 2015 WL 5697780, at *10-11 (collecting cases concerning reasonable hourly fees for attorneys of varying levels of experience and skill in this District). Multiplying this rate by the 26.4 hours of legal work reflected in the declarations filed by Reilly's three attorneys yields an award of $5,280.

Reilly also seeks costs in the total amount of $450 for the court filing fee. Prop. Findings ¶ 63. Attorneys' fees may include "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Noble,* 2015 WL 5697780, at *13 (quoting *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir. 1998)). However, the filing fee in this District is $400, not $450. Consequently, I respectfully recommend that plaintiff be awarded a total of $5,680 in attorneys' fees and costs.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the District Judge enter a judgment awarding plaintiff: (i) statutory damages under the Copyright Act in the amount of $15,000; (ii) statutory damages under the DMCA in the amount of $10,000; and (iii) attorneys' fees and costs in the amount of $5,680.

26

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Paul A. Engelmayer at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned Magistrate Judge at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Engelmayer. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: New York, New York
　　　October31, 2016

**SO ORDERED**.

**BARBARA MOSES**
**United States Magistrate Judge**

27